**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

MICHAEL L. MORRIS,                    No. CIV S-05-0641-CMK

        Plaintiff,

   vs.                                    MEMORANDUM OPINION AND ORDER

JO ANNE B. BARNHART,
Commissioner of Social Security,

        Defendant.

_____/

        Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the consent of the parties, this case is before the undersigned for final decision on plaintiff's motion for summary judgment (Doc. 23) and defendant's cross-motion for summary judgment (Doc. 30).[1]

/ / /

/ / /

---

    [1]    The court finds that oral argument is not necessary. Plaintiff's request for oral argument (Doc. 32) will, therefore, be denied.

# I. BACKGROUND

Plaintiff applied for supplemental security income benefits on June 10, 2003, based on disability.  In his application, plaintiff claims that his impairment began on April 1, 2003.  Plaintiff claims his disability consists of a combination of Hepatitis C, severe weakness, weight loss, fatigue, nausea, joint pain, and dizziness.   Plaintiff is a United States citizen born January 29, 1957, with a high school education.

### A.      Summary of the Evidence

The record contains medical documents from the former California Department of Corrections (now the California Department of Corrections and Rehabilitation) for the period May 1, 1990, through September 4, 2001.  Medical notes from May 1990 indicate that plaintiff was "significantly depressed [during the] past year."  Plaintiff was interviewed by prison medical staff and underwent a routine health screening on October 6, 1994.  Notes from that interview state that "there is not an indication that this offender is suffering from a mental illness."  Notes from November 11, 1994, indicate that, at that time, plaintiff was not on any medications.  In April 2000 plaintiff was evaluated by a psychologist who determined that plaintiff's mental health was suitable for release to the general prison population.  On September 2, 2001, plaintiff reported to the prison medical clinic complaining that he had thrown his back out.  He was examined by prison medical staff, who found no abnormality, and prescribed Motrin.  In June 2001 plaintiff complained of trouble breathing for the past three or four months.  A July 2001 chest x-ray revealed no abnormalities.

The record also contains plaintiff's medical file from Placer Auburn Clinic for the period April 23, 2003, through September 22, 2003.  Plaintiff's treating physician at Placer Auburn Clinic was Alexander Klistoff, M.D.  Plaintiff was being treated for complaints associated with possible Hepatitis C.  At the request of Dr. Klistoff, plaintiff underwent an ultrasound of his abdomen on May 12, 2003.  The data from that exam was interpreted by Charles H. McDonnell, M.D., who found a normal abdomen.

1    The record contains the medical file from Richard L. Roehrkasse, M.D., for the

2  period May 12, 2003, through March 11, 2004.  Dr. Roehrkasse, who is a gastroenterology

3  specialist at U.S. Davis Health System, Auburn, examined plaintiff following a referral from Dr.

4  Klistoff regarding plaintiff's Hepatitis C complaints.  In a March 11, 2004, letter to Dr. Klistoff,

5  Dr. Roehrkasse stated a gastroscopy was normal and that plaintiff's nausea and vomiting had

6  resolved.  Dr. Roehrkasse noted, however, that a liver biopsy revealed stage II fibrosis and grade

7  II Hepatitis.  Dr. Roehrkasse recommended treatment based on his conclusion that plaintiff has

8  "significant disease."

9    In July 2003, plaintiff's physical residual functional capacity was assessed by

10 agency consultative physician C. Richard Dann, M.D.  In that assessment, Dr. Dann concluded

11 that plaintiff could occasionally lift 20 pounds and frequently lift 10 pounds.  Dr. Dann also

12 concluded that plaintiff could sit, stand, and/or walk for six hours in an eight-hour workday.  Dr.

13 Dann concluded that plaintiff was unlimited in his ability to push and pull and that no postural,

14 visual, communicative, environmental, or manipulative limitations were established.  Dr. Dann

15 offered no explanation for any of the conclusions reached, and specifically noted that he did not

16 review treating or examining source evidence.

17    Finally, the record contains the consultative examination report prepared by

18 agency consultative examining physician Janet O'Brien, M.D.  Dr. O'Brien examined plaintiff

19 on September 16, 2004.  In her report, Dr. O'Brien noted the following complaints: (1) cervical

20 disc disease; (2) Hepatitis C; (3) left shoulder pain; and (4) shortness of breath.  As to Hepatitis

21 C, plaintiff reported that he became ill and lost 35 pounds in early 2003 and that a positive

22 diagnosis was made in March 2003.  On examination, Dr. O'Brien noted "right upper quadrant

23 [abdomen] tenderness on palpation but no palpable liver edge."  Dr. O'Brien diagnosed plaintiff

24 as having: (1) Hepatitis C; (2) neck and shoulder pain consistent with muscle strain; and (3)

25 shortness of breath, possibly due to COPD.  As to plaintiff's physical residual functional

26 capacity, Dr. O'Brien opined that plaintiff could sit, stand, and walk six hours in an eight-hour

workday.  Dr. O'Brien also concluded that plaintiff could lift and carry 50 pounds frequently and 100 pounds occasionally.  Dr. O'Brien noted no other limitations.

**B.    Procedural History**

Plaintiff's claim was initially denied.  Following denial of his request for reconsideration, plaintiff requested an administrative hearing, which was held on August 4, 2004, before Administrative Law Judge ("ALJ") Antonio Acevedo-Torres.

In his December 15, 2004, decision, the ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity since the alleged onset of disability;

2. The claimant's chronic Hepatitis C is a severe impairment, based upon the requirements in the Regulations;

3. This medically determinable impairment does not meet or medically equal one of the listed impairments in [the Listing of Impairments];

4. The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision;

5. The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments;

6. The claimant has the residual functional capacity to lift/carry/push/pull 20 pounds occasionally and 10 pounds frequently; stand and/or walk 6 hours in an 8-hour day; and sit 6 hours in an 8-hour day; further, to prevent exposing others to Hepatitis C, the claimant is precluded from work environments in which blood-to-blood contact is likely;

7. The claimant has no past relevant work;

8. The claimant is a younger individual;

9. The claimant has a high school education;

10. The claimant has the residual functional capacity to perform the full range of light work;

11. Based on an exertional capacity for light work, and the claimant's age, education, and work experience, a finding of not disabled is directed by Medical-Vocational Rule 202.20; and

12. The claimant was not under a disability . . . at any time through the date of the decision.

1   Based on these findings, the ALJ concluded that plaintiff was not disabled and, therefore, not

2   entitled to benefits.  After the Appeals Council accepted new evidence but declined review on

3   June 22, 2005, this appeal followed.

4

5                              **II.  STANDARD OF REVIEW**

6            The court reviews the Commissioner's final decision to determine whether it is:

7   (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a

8   whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is

9   more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520,

10  521 (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to

11  support a conclusion."  Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole,

12  including both the evidence that supports and detracts from the Commissioner's conclusion,

13  must be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986);

14  Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the

15  Commissioner's decision simply by isolating a specific quantum of supporting evidence.  See

16  Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the

17  administrative findings, or if there is conflicting evidence supporting a particular finding, the

18  finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th

19  Cir. 1987).  Therefore, where the evidence is susceptible to more than one rational interpretation,

20  one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas

21  v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal

22  standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338

23  (9th Cir. 1988).

24  / / /

25  / / /

26  / / /

# III.  DISCUSSION

In his motion for summary judgment, plaintiff argues: (1) the ALJ improperly discounted the opinions of plaintiff's treating physicians; (2) the ALJ improperly discounted plaintiff's credibility; and (3) the ALJ erred in finding that his severe Hepatitis C impairment is not listed in the Listing of Impairments.

## A.    Medical Opinions

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given to the opinion of a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether:  (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).  A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence.  See Lester, 81 F.3d at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence,

1   and makes a finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent

2   specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or

3   examining professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining

4   professional, without other evidence, is insufficient to reject the opinion of a treating or

5   examining professional.  See id. at 831.  In any event, the Commissioner need not give weight to

6   any conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d

7   1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported

8   opinion); see also Magallanes, 881 F.2d at 751.

9           Plaintiff argues that the ALJ's decision ". . . completely and inappropriately

10  discounts the record established by Mr. Morris' primary treating and specialty care providers Dr.

11  Klistoff and Dr. Roehrkasse . . . in favor of the report provided by . . . consultative examiner, Dr.

12  O'Brien."  In particular, plaintiff asserts that the ALJ failed to articulate specific or legitimate

13  reasons to support his analysis of the medical opinions.  Contrary to this assertion, however, the

14  ALJ does not appear to have rejected the opinions of either Dr. Klistoff or Dr. Roehrkasse.  A

15  review of these doctors' records does not reveal that they offered an opinion as to plaintiff's

16  functional capabilities in light of his Hepatitis C diagnosis.  Therefore, there was no opinion for

17  the ALJ to reject.  Rather, the ALJ's decision merely sets out these doctors' observations and

18  diagnoses.

19          Having reviewed the entire record, the court is puzzled by plaintiff's argument.

20  Instead of rejecting plaintiff's treating physicians' opinions in favor of Dr. O'Brien's, as plaintiff

21  asserts, the ALJ found that the medical evidence was consistent.  In particular, all three doctors

22  diagnosed Hepatitis C.  Moreover, as to plaintiff's capabilities in light of this diagnosis, both Dr.

23  O'Brien and Dr. Dann agreed on the scope of plaintiff's limitations.  These opinions, which

24  constitute substantial evidence, formed the basis for the ALJ's residual functional capacity

25  finding.

26  / / /

1          **B.      Plaintiff's Credibility**

2          The Commissioner determines whether a disability applicant is credible, and the

3   court defers to the Commissioner's discretion if the Commissioner used the proper process and

4   provided proper reasons.  See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995).  An explicit

5   credibility finding must be supported by specific, cogent reasons.  See Rashad v. Sullivan, 903

6   F.2d 1229, 1231 (9th Cir. 1990).  General findings are insufficient.  See Lester v. Chater, 81 F.3d

7   821, 834 (9th Cir. 1995).  Rather, the Commissioner must identify what testimony is not credible

8   and what evidence undermines the testimony.  See id.  Moreover, unless there is affirmative

9   evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not

10  credible must be "clear and convincing."  See id.

11         If there is objective medical evidence of an underlying impairment, the

12  Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely

13  because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d

14  341, 347-48 (9th Cir. 1991) (en banc).  The Commissioner may, however, consider the nature of

15  the symptoms alleged, including aggravating factors, medication, treatment, and functional

16  restrictions.  See id. at 345-47.  In weighing credibility, the Commissioner may also consider: (1)

17  the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent

18  testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a

19  prescribed course of treatment; (3) the claimant's daily activities; (4) work records; (5) physician

20  and third-party testimony about the nature, severity, and effect of symptoms.  See Smolen v.

21  Chater, 80 F.3d 1273, 1284 (9th Cir. 1996) (citations omitted).

22         As to plaintiff's credibility, the ALJ stated:

23         The claimant's allegations of totally disabling symptoms are not supported
           by the record.  His description of the severity of the limitations imposed
24         by his condition has been to extreme as to appear implausible.  Given the
           claimant's allegations of totally disabling symptoms, one might expect to
25         see some indication in the treatment records of restrictions placed on the
           claimant by the treating physician, yet a review of the record in this case
26         reveals no restrictions recommended by the treating physician.  The

claimant testified that his immune system is so compromised that he catches everything; however, there is nothing in the treatment record to suggest that the claimant has experienced an inordinate number of illnesses.  Furthermore, the record shows that although the claimant has been counseled on precautionary measures he should observe so as to minimize the possibility of infecting others with Hepatitis C, here is no indication he has been advised that he is more susceptible to illness and should avoid contact with those who are ill.  It is also noted that the record contains a number of inconsistencies which brings the claimant's credibility into serious question.  The claimant has provided conflicting information concerning when he stopped drinking alcohol.  He reported to Placer Auburn Clinic on April 23, 2003, that he was using alcohol moderately at that time and approximately a week later he reported he had consumed no alcohol in four weeks.  The claimant subsequently reported to Richard L. Roehrkasse, M.D., in October 2003 that he quit drinking in January 2003.  There is some indication the claimant's living situation may be more stable than has been alleged in connection with this application and request.  Although the claimant reported to Dr. O'Brien that he was currently living in his truck, he also reported engaging in activities one would generally not expect of an individual who is living in a truck, namely, using a microwave and watching television in bed.  The claimant has also provided vague and inconsistent information concerning his work activity.  In May 2003, the claimant reported to Placer Auburn Clinic medical personnel that he was currently working as a laborer, yet he subsequently reported in his Disability Report (dated June 8, 2003) that he last worked in 2001, and he testified at the hearing that he last worked in March 2003.  Furthermore, the claimant has a very sporadic work history which raises a question as to whether his continuing unemployment is actually due to medical impairments.

Plaintiff argues that the ALJ improperly inferred a lack of credibility where he could have asked clarifying questions.  Specifically, plaintiff challenges the ALJ's statement that "the claimant has a very sporadic work history which raises a question as to whether his continuing unemployment is actually due to medical impairments."  Apparently, in order to avoid any improper inference, plaintiff would have had the ALJ ask the follow-up question: "Is your continuing unemployment really due to medical impairments?"  If plaintiff answered "no," the case would be over.  So, the only answer plaintiff could have given to such a question would have been "yes."  Such an exercise would have been useless and, more to the point, would not have clarified anything.

/ / /

/ / /

/ / /

9

1    Plaintiff also suggests that the ALJ had a duty to ask follow-up questions

2  regarding the various inconsistencies in plaintiff's responses regarding his alcohol use and living

3  situation.  Plaintiff, however, cites no authority in support of this argument.  Moreover, even

4  assuming that the ALJ should have asked some follow-up questions regarding plaintiff's alcohol

5  use, living situation, and work history, plaintiff's allegations of totally disabling symptoms are

6  inconsistent with the medical evidence, as discussed above.  This is distinguishable from the

7  situation where the alleged symptoms are unsupported by the record – which, alone, is an

8  insufficient reason to discount credibility.  Here, rather than being <u>unsupported</u>, plaintiff's

9  alleged symptoms are <u>contradicted</u> by the record.

10   **C.**   <u>**Listing of Impairments**</u>

11    The Social Security Regulations "Listing of Impairments" is comprised of

12  impairments to fifteen categories of body systems that are severe enough to preclude a person

13  from performing gainful activity.  <u>Young v. Sullivan</u>, 911 F.2d 180, 183-84 (9th Cir. 1990); 20

14  C.F.R. § 404.1520(d).  Conditions described in the listings are considered so severe that they are

15  presumed disabling.  20 C.F.R. § 404.1520(d).  In meeting or equaling a listing, all the

16  requirements of that listing must be met.  <u>Key v. Heckler</u>, 754 F.2d 1545, 1550 (9th Cir. 1985).

17    Plaintiff argues that the ALJ incorrectly concluded that Listing 5.05(F)(3) does

18  not apply.  Listing 5.05(F)(3) requires confirmation of chronic liver disease by a liver biopsy

19  obtained independent of the disability evaluation and one of the following:

20    1.  Ascites, not attributable to other causes, recurrent or persisting
       for at least 5 months, demonstrated by abdominal parahypoalbuminemia
21       of 3.0gm. per deciliter or less; or

22    2.  Serum bilirubin of 2.5 mg. per deciliter or greater on repeated
       examinations for at least 3 months; or
23

24    3.  Hepatic cell necrosis or inflammation persisting for at least 3
       months, documented by repeated abnormalities of prothrombin time and
       enzymes indicative of hepatic dysfunction.
25

26  ///

1   As plaintiff correctly observes, Listing 5.05(F)(3) requires confirmation by biopsy and only one

2   of the three additional factors (ascites <u>or</u> high serum levels <u>or</u> hepatic cell necrosis).  Plaintiff

3   asserts that the ALJ applied the listing to require all three additional factors.  As to Listing 5.05,

4   the ALJ stated:

5           The undersigned has reviewed all of the evidence and concludes the
            claimant's impairment does not meet or equal the severity of any listing.
6           Specifically, the undersigned considered whether the claimant's chronic
            Hepatitis C meets the severity of Listing 5.05.  Although the claimant has
7           significant liver damage as a result of Hepatitis C which has been
            confirmed by liver biopsy, there is no evidence of ascites not attributable
8           to other causes recurrent or persisting for at least three months, serum
            bilirubin of 2.5 mg. per deciliter or greater on repeated examinations for at
9           least three months, or hepatic cell necrosis or inflammation persisting for
            at least three months.

10

11  It is clear from this that the ALJ correctly understood and applied Listing 5.05(F)(3).

12  Specifically, by the use of the disjunctive "or" instead of the conjunctive "and," the decision is

13  clear that only one of the three additional factors is required.

14

15                              **IV.  CONCLUSION**

16          This case comes down to a fundamental disagreement over the effects of

17  plaintiff's Hepatitis C.  Plaintiff asserts that the evidence supports a conclusion that he is

18  disabled as a result of this impairment.  The ALJ concluded otherwise, finding that plaintiff's

19  functional capacity was sufficient to allow him to perform work.  As stated above, this court may

20  only set aside the ALJ's conclusions if they are based on improperly legal analysis or are not

21  supported by substantial evidence in the record as a whole.  Here, the ALJ conducted the proper

22  legal analysis each step of the way.  Specifically, the ALJ properly evaluated plaintiff's

23  credibility and applicability of the Listing of Impairments.  As to plaintiff's argument that the

24  ALJ somehow improperly rejected his treating physicians' opinions, the court finds no basis for

25  this argument given that the ALJ did not reject any medical opinion.  Finally, there is ample

26  support for the ALJ's functional capacity finding in the record.  In particular, the various medical

1  sources all agree that plaintiff has Hepatitis C.  Further, those doctors who offered an assessment

2  of plaintiff's functional capabilities agreed that plaintiff could still perform work.  In fact, the

3  ALJ's final functional capacity assessment was more limiting that what Dr. O'Brien opined.

4          Based on the foregoing, the court concludes that the Commissioner's final

5  decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS

6  HEREBY ORDERED that:

7          1.        Plaintiff's motion for oral argument is denied;

8          2.        Plaintiff's motion for summary judgment is denied;

9          3.        Defendant's cross-motion for summary judgment is granted; and

10          4.        The Clerk of the Court is directed to enter judgment and close this file.

11

12  DATED:   September 11, 2006.

13

14                                                    _____

15                                        **CRAIG M. KELLISON**
                                      UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20

21

22

23

24

25

26